Good morning, Your Honors, and may it please the Court. As you noted, my name is Chad Taylor of the Simmerman Law Office in Clarksburg, West Virginia. I'm here today representing Billy Prince, the appellant. I remember one thing about ERISA from law school, and that's from a torts professor who told us, if we had a client who walked in our door with a claim that could potentially implicate ERISA, we should not only decline to take the case, we should run the opposite direction. After handling this matter for the past two years, I now understand why. Because a statute that was initially designed to protect the working man and his beneficiaries can be used by billion-dollar corporations like Sears as a shield, a complete shield, from liability with respect to claims which may only have some marginal relevance. That's what the statute says. That's correct, Your Honor. So they used the statute appropriately. What's your best argument that they did not? Your Honor. Sears. I'm sorry, Your Honor. What's your best argument that Sears did not appropriately use the statute? You made it sound like this billion-dollar corporation came in and somehow manipulated the system. What's your best argument that that's the case? Your Honor, I believe that they're, to use your words, manipulating the system by taking claims which have no substantive relevance to ERISA and saying, well, they somewhat involve ERISA, therefore they are preempted. And they are taking the word preempt and defining it as the equivalent of defeat because my client— How does it not involve ERISA? What is it that your client wants at bottom? What do they want? My client wants damages. He wants damages. How would you measure the damages? The damages may be measured, as this court found in the PISLO decision, by the benefits, which he believed he had, $150,000. And those benefits were under the plan. Isn't that correct? That's correct, Your Honor. But the courts have drawn a distinction between seeking those benefits directly and challenging policy provisions and merely seeking damages, which may be measured, one of the ways they may be measured, not the entire way, by what the policy said. My client is comfortable going to a jury and saying, here's what's happening. Is it your position—I'm sorry, Jerry. Go ahead, Your Honor, please. You have a wonderful trial lawyer's ability to get a head of steam on. It's hard to get in. So what I wanted to know is if we really, when we're looking at ERISA, we don't look at what you're asking for, what relief you're asking for. We're looking for the character of the claim, what the claim is about, right? I think that's true, Your Honor. Right. So that whether you're asking for damages or not really is irrelevant. Well, I think some of the courts have said that that's one of the factors you can look at. Are one of those courts the Fourth Circuit or the Supreme Court? I don't think so. Well, Your Honor, the—I'm not sure I can tell you that. That's all right. I don't want to use up your time. Go ahead. But, Your Honor, even if you look at the types of claims we're making, we're making claims which arise under West Virginia common law. And there are—I mean, let's look at the—you asked, Judge Thacker asked for the strongest argument I had, and I believe that's with respect to the third prong of this no-code products test. Can we resolve these claims without needing to interpret—can a court, without needing to interpret the policy provisions? Absolutely. Absolutely. One of your claims is constructive fraud, negligent misrepresentation. Yes, Your Honor. So where—you have to have a duty. Right. Where do you get the duty there? The duty is owed—it's a common law duty that an employer owes to an employee. These aren't just two people passing on the street. This is a gentleman who has worked for a company for probably two decades, and his employer has a duty to not misrepresent certain things to him. But the duty arises out of the contractual employment relationship, doesn't it? Rather than any law of ordinary care or other traditional common law duty. I mean, it's the contractual relationship between employer and employee that gives rise to any duties that are enforced here, isn't it? Maybe specifically, Your Honor, but I disagree in that I think under the elements of the West Virginia Common Law with respect to constructive fraud slash negligent misrepresentation, anyone who has reason to believe that someone will rely upon representation that they make to their detriment has a duty to that person. And I think that's even more the case when you have an employer, a long-time employer of a gentleman, who makes certain representations, not just representing, but confirming that he has certain coverages. And then two years later, 27 months later, after taking premiums out of his check, says, sorry, we goofed, you don't have this coverage. Oh, by the way, sorry, your wife is terminally ill. And that's just the way it is. And then when we try to seek justice for those claims, well, ERISA gives us blanket immunity. Sears has acknowledged in their response papers in footnotes three and four, I believe, that Mr. Prince has no remedy pursuant to ERISA. Pursuant to Section 502, there are no damages available for what these claims seek. He's not seeking to recover benefits under the policy. He's not seeking to clarify rights for future benefits under a policy. He simply is left without a remedy. And I submit that that's not justice. That's not consistent with the stated purpose of ERISA. And it's not consistent with the fact that this court has established a three-part test, the Sunoco Products Test. We're analyzing these cases on a case-by-case basis when we're dealing with complete preemption. Can I ask you? Absolutely. Maybe this is a factual question that I wasn't really very clear on. It seemed to me that there is evidence in the record that Sears said, after the fact, when your client says that he didn't get the notice but he doesn't dispute that it was sent, right? Isn't that a fair statement? I don't know if that's fair, Your Honor. I don't know that I have evidence to dispute it. Well. Nor does he. Okay. So you don't dispute it. We can't dispute that it was sent. Right. Okay. You can't dispute it. But in the subsequent letter, Sears said to you, okay, we will consider, because you have to have given us what the health information is at the time, and we will take you back to that time and put in the health information as it existed right then. Did you ever take them up on that? No, Your Honor. And here's why. Well, then, I don't understand even, I mean, I don't even understand how you'd have, if you had a common law handling. Your Honor, at that point in time, my client's wife was terminally ill. And to expect that this employer, Sears, would put the blinders on and fairly consider a new application, not considering the last two years of treatments and diagnoses and so forth, we felt would be ridiculous. Well, I don't think it's any more, I mean, you're asking us, you acknowledge, don't you, that you have to have given, your client has to have given them the appropriate medical information to get the increased insurance. Yes, Your Honor. So I would think you'd do better with giving, because you're going to have to give it to them sometime. You have to give it to them. If we should go your way now, you're going to have to give it to them. No, Your Honor, I won't. The medical information as she was at the time. Yes, you are. I don't, I submit. That's what you need to make a claim here under the policy. Under the policy, exactly, Your Honor. We're not claiming under the policy. Okay. And there lies the issue. Yeah, right. Well, that is a very big issue. If your only duty is through the policy and you're not claiming through it, so you don't want to comply with the policy. No, we have conceded right from the outset, Your Honor, that if you look at the policy, it talks about long health form as necessary. He never got that notice. He didn't do it. But he did get the letter that said, from Sears, saying, we're sorry about all this. We're sorry about the misunderstanding. Give us the information as it existed in, what, 2011? That's correct, Your Honor. That was probably in 2014 when that letter came down. But they were going to go back to the time. That's what they say in the letter. That's the representation that Sears made. Yes, Your Honor. And your client didn't take them up on that. You decided that that wasn't a good way to go. Well, Your Honor, there, I mean. I mean, that doesn't really do anything with respect to your ERISA claim. But it does, you make, I think, a strong equitable claim. And it does suggest that there are equities on the other side, too. Well, I'll tell you exactly why that decision was made. One, there was a fear of waiving the claim that we are presenting here today, a claim that he was told for over two years, which complies with West Virginia's statutory law, which says you can't waive coverage once she has been in effect for two years. So we felt like if we would basically waive that, potentially it could be viewed as waiving that by reapplying for something that he has been told he had for over two years. Can you explain to me, because this does sound like the argument you would make to the jury if you got to a jury, correct? Yes, Your Honor. So how do you make that argument about coverage and the policy and at the same time say that you are not making a claim under the policy? That's an excellent question, Judge Thacker. And the answer to that is this. She only asks excellent questions. Well, I think you all ask very important questions. But here's the answer to that. The answer is the Sunoco products test doesn't say that you can't mention that there's an ERISA plan. You have to totally disregard and ignore it. The element is, is the court, or I guess the jury, going to have to interpret the provisions? If it was like a calculation error, let's say my client was a disabled individual and he claims that his employer miscalculated his benefits, the amount of the benefits. Well, we would look to a specific policy provision and we would do the math and figure that out. And that would be a true ERISA claim. In this case, we've got a gentleman who was misrepresented. Something was misrepresented to him about something. That something just happens to be ERISA coverage. And if you argue damages to the jury, where would you tell them to start in determining what their damages should be? I think the damages would be compensatory and punitives totally up to the jury. Now, again, I believe that this court through PISLO and there are other courts which have said the Tovey decision from the Western District of Missouri would be one, which I cite in my moving papers, that you can consider as part of your damage calculation jury what the policy amount was. But as far as putting it on a blackboard and saying, here are my special damages, that's not what we're doing. And we're comfortable with that. We just want to get this claim before a jury. We want to be able to conduct discovery. We want to be able to litigate this. Actually, I thank this court for conducting this hearing today. This is the first time in two years. You don't want to limit the damages to the policy. Absolutely. At this point, absolutely not. Which is why you filed it this way. Absolutely, Your Honor. He suffered for over two years in dealing with this. I mean, I would watch him come into my office and his wife, who the cancer was eating away, and having to deal with attorneys and trying to figure out how can we regain what we thought we had during the last days of her life. And, you know, candidly, Ms. Prince was not just a client. She was my paralegal for seven years. So, you know, I'm very much invested in this. I truly believe that justice will not be served if preemption is found. Because, again, preemption will equal defeat. And allowing myself to reserve some time for rebuttal, unless the court has some other questions at this time, I will be seated. Thank you. Thank you. Ms. Hall. May it please the court, good morning. My name is Jill Hall, and I represent Sears Holding Corporation in this appeal. I appreciate the opportunity to appear before the panel this morning and to again request that this court affirm the district court's holding that ERISA does completely preempt Mr. Prince's state claims. I think the last comments that Mr. Taylor made really tell us why we're here today. It's true that Mr. Prince does not want ERISA to preempt his claims. And the reason for that is because it would limit the damages that are available to him. Now, I would also like to point out that ERISA preemption does not equal defeat. Preemption does not mean he does not have a claim. Well, you said that in your brief at footnotes three and four, you conceded, or at least I looked at those footnotes, you at least argued to the court that the claim should be dismissed. And you made a motion on appeal. That's true, that the claim should be dismissed. It sounds to me like you think it's over. I believe when you drill down to what happened in this case, it is over. And the reason for that is ERISA preempts and converts his claim to one arising under ERISA, a claim for benefits under 502A1B. He has that claim for benefits. The case should be dismissed because once we look at the plan documents and the clear terms in the life insurance plan, it's clear he did not comply with the terms to secure the coverage that he seeks. I want to talk to your colleague about this. During the course of all of this, your client made an offer to him that if he could come up with the medical records of his wife as of the time that he applied for the insurance, they would consider them and perhaps make insurance. Would your client still be willing to do that? I'm sure it would. What we have said is that this case should be dismissed because ERISA preempts the state law claims, and he did not comply with the terms of the plan. Now, I would have to, of course, check with my client on where we are on the timing, but this is the first time I've heard that the reason Mr. Prince did not take us up on this offer was because he didn't think it was serious or whatever the reference was. Sears recognized that there was an error and that it was its error, and that was the reason that the representation that coverage in place was made. In order to rectify that and to address this equity argument that Mr. Taylor has raised in his briefs in here this morning, it did offer to take a look at medical information as of 2011 before Mrs. Prince was diagnosed with cancer. Now, Mr. Prince knew at least, even if he did not receive that January 2011 letter, he knew at least eight months before Mrs. Prince passed away that the coverage was not in effect. The offer to resubmit medical information as of 2011 before the cancer diagnosis was made six months before Mrs. Prince passed away. He did not take Sears up on the offer to submit that medical information and permit retroactive coverage for the life insurance. And you think that your client might possibly agree to that again? They might. How is the intentional tort claim completely preempted by ERISA? I mean, it may be defective for other reasons under 12v6, but I'm having a little bit of trouble figuring out how it's completely preempted. Well, the intentional infliction of emotional distress claim is completely preempted for the same reasons, really, that the negligent misrepresentation claim is completely preempted. All of the facts that arise out of the allegations set forth in the complaint revolve completely around the coverage that was applied for, the representation that coverage was in effect, the fact that it was not actually in effect because the evidence of insurability requirements were not satisfied, the fact that Sears terminated the coverage and did not pay the claim. Those are the facts that form the allegations of both counts. Well, also, but in the intentional infliction, it would be that Sears did so intentionally in order to cause them pain. And that's different than negligent misrepresentation, isn't it? It is different. I would say I believe this court found intentional infliction of emotional distress claim to be preempted in Powell v. C&P Telephone Company. And courts across the country have considered the intentional infliction of an emotional distress claim, like other torts and like a breach of contract claim. If the basis of the allegation is the subject ERISA plan and the administrator acted within the bounds of the scope of its authority as an administrator, we have the same issue where the claim could have been brought under 502A. Now, Mr. Taylor has cited cases, mentions the PISLO case both in his brief and this morning. In the PISLO case, the representation was about continued employment. It wasn't about an employee benefit. In that case, employee benefit was more of a tangential issue. And he's correct that in some cases, an administrator might act so far outside the bounds of the scope of its authority that ERISA should not preempt a claim. That isn't what we have here, however. The only allegations in the complaint are that Mr. Prince participated in an ERISA plan, he sought coverage for his wife under that plan, he did not receive the benefit that he feels he should have received under that plan, and that Sears improperly administered the plan when it made the alleged misrepresentation. There are no facts that do not involve this ERISA plan and Sears' role as administrator of the plan. I'd also point out that Tovey that Mr. Taylor has relied on is simply not good law. Courts have said that the Tovey decision is one that is not relied on in the Eighth Circuit anymore. There have been plenty of cases in the Eighth Circuit which encompasses Tovey that hold that negligent misrepresentation claims are completely preempted by ERISA. I would suggest that this case is more closely aligned with the Moon versus BWX tech case that this court decided a few years back. In that case, an employee applied for life insurance benefits. The employer represented that he had those benefits, that coverage was effective. The employer collected premiums for those benefits. Then after the employee died, the plan refused to provide the benefits, saying that once that employee had retired from his employment, that he was no longer eligible under the plan. So in that case, the employee had actually passed away before the administrative error was caught, and it was determined that the employee was not eligible for coverage. In this case, we do have that time period of six, eight months where the error was caught and Sears attempted to rectify that error by allowing Mr. Prince to reapply for the coverage with medical information as of 2011. I will wrap up if the court doesn't have further questions and just address the policy argument again that Mr. Prince has made. Again, it's not ERISA preemption that leaves Mr. Prince without a remedy. It's the fact that he did not comply with the evidence of insurability requirements under the plan once the claim is recast as an ERISA claim under 502A. And finally, this court has said, and the United States Supreme Court has said, that the policy argument that Mr. Taylor makes is just one that they cannot consider. It was Congress who made a policy determination to include certain remedies under ERISA and exclude other remedies under ERISA. And if Mr. Prince were permitted to seek state law remedies that are not included in ERISA, it would undermine Congress's policy decisions that it made when drafting the statute. Thank you for your time. Thank you very much. Now, Your Honors, if it wasn't ridiculous for Sears to propose before Mrs. Prince passed away that it would put the blinders on and consider health information as of 2011, think about doing that now. If they granted coverage, they would essentially be writing a check for $150,000. She passed away May 26th. But they might be willing to do that. Well, Your Honor, even if they did. Or they might be willing to settle the case with you for some amount less than that, but more than you have now. Your Honor, without disclosing what goes on in confidential mediation sessions, we have had phone calls with a mediator, but we have not mediated. No mediation has taken place to date. I can represent that without issue. Mr. Prince is not trying to undermine federal statutory law. All we're asking, and let me tell you why. The courts have been cognizant of the fact that ERISA was established to promote efficiency, but also standardization across the nation with respect to particularly pension plans and employee benefit plans. The resolution of Mr. Prince's state law claims will have no impact on how prudential insurance, which was the insurance provider in this matter, how it processes applications for coverage, how it determines whether coverage is in effect, and whether it pays benefits. This will merely address an issue with Sears after the fact. We're talking about what happened after this coverage denial was essentially made in apparently January of 2011. We're not talking about the coverage decision where that was properly filed. I don't know how many different ways Mr. Prince can concede that he didn't submit the long health form, but that's what he's done in every pleading that we filed, I believe. We're talking about the 27 months thereafter. And then some, where Sears confirmed he had coverage, and then continued to string him along thereafter, telling him that you've got this amount of coverage, we're going to keep taking your premiums, and then it turns out to not be the case when he most needs it. That's what these claims are about. It's not the policies or the policy. And I still struggle with this. What provision in the policy would we look to, to determine not whether it was appropriate for Prudential or Sears to deny coverage at the outset, but what provision would a jury or a judge consider to determine whether it was appropriate to essentially lie to my client for 27 months? There's no provision in the policy for that. Aren't you challenging Sears' administration on the policy? Your Honor, again... I.e., they're lying about the policy? But the fact that they're... That sounds to me like a challenge to administration. Because ERISA's involved, I understand that you can make that argument, Your Honor. However, the fact... Take ERISA away. But again, the promise, the subject of that promise shouldn't give rise to preemption. Really, because that substance... I do understand your position, but isn't this a claim that they have... If we had a regular trust, and the trustee lied to you, right? Violate the trust. And that would be... It hasn't administered it properly. And that would probably be the only relationship I would have with the trustee, would be that trust. In this case, we've got an employee who is working for an employer. The employer has a duty to not lie or misrepresent to him many things. Let's say they represented to him for 27 months, Hey, if you work for 27 months and do good, we're going to give you a promotion. And that doesn't come to pass. And he sues for negligent misrepresentation. That has nothing to do with ERISA. It wouldn't be preempted. The fact that this case involves the substance of the promise was ERISA, should not take Mr. Prince's legs out from under him and deny him justice. Deny him a day in court. Well, now, what about the Powell case? Ms. Hall seems to rely on that pretty heavily. And the language in Powell that says it doesn't really matter how you dress up the claim. If it's a claim that arises from a mishandling of an ERISA duty, then it's under ERISA. How do you distinguish that from your present situation? She pointed out, and I believe she is correct, that one of the claims was for intentional infliction of emotional distress. So how do you distinguish that from the situation you've brought before us today? Well, it's intentional-slash-reckless. In West Virginia, it's essentially good enough if you recklessly. Why is this language in Powell not controlling him? Because I submit that this court has not made a blanket finding that all, let's say, intentional infliction of emotional distress claims are automatically preempted. Or all negligent misrepresentation claims are preempted. The court has said, we've got this three-part test. And this is a higher test than merely, does it relate to an ERISA plan? And these three elements need to be carefully considered. And I respectfully submit, with deference and respect to Judge Bailey, that the district court did not do that. Particularly with respect to that third and very important element. Are we going to have to look at the policy language to determine whether these claims are viable? And I'm afraid that Sears, in this instance, the district court, simply said in a conclusory matter, well, we're going to have to look at that coverage decision in 2011. We're not even challenging that decision. It's the 27 months thereafter. And I have serious concern about whether the district court carefully examined the Sunoco products elements two and three. And in finding that these claims are in fact preempted. And respectfully, your honors, I ask that this court analyze that test. It's a de novo standing. So you folks can consider the record as a whole. And find that, in this case, is ERISA involved? Yes. But an ERISA policy, that is. But an ERISA is not implicated. Simply because the subject of the promise made by the employer to an employee was that this coverage would be in effect. Thank you very much. Thank you very much. We will come down and say hello to the lawyers, and then we'll go to the next.
judges: Diana Gribbon Motz, Barbara Milano Keenan, Stephanie D. Thacker